**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

JEREMIAH BARNES,

                             Plaintiff,

        -vs-

EQUIFAX INFORMATION SERVICES
LLC; EXPERIAN INFORMATION
SOLUTIONS, INC.; and TRANS UNION,
LLC,

                         Defendants.

Case No.: _____

**JURY TRIAL DEMANDED**

## COMPLAINT

Jeremiah Barnes ("Plaintiff" or "Mr. Barnes"), brings this Complaint against Equifax Information Services LLC ("Defendant Equifax" or "Equifax"), Experian Information Solutions, Inc. ("Defendant Experian" or "Experian"), and Trans Union, LLC ("Defendant Trans Union" or "Trans Union") (collectively, "Defendants"), for actual, statutory, and punitive damages, costs, and attorneys' fees, for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, arising out of Defendants' mixing and merging of Plaintiff's credit files, credit reports, credit history, and personal identification information with that of his twin brother, a separate consumer with a different first name, Social Security number, and address history.

## PRELIMINARY STATEMENT

1.     The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual citizens. Data technology, whether it be used by businesses, banks, the Internal Revenue Service or other institutions, allows

information concerning individuals to flow immediately to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients, and all of society should benefit from the resulting convenience and efficiency.

2.      Unfortunately, however, this information has also become readily available for and subject to mishandling and misuse. Individuals can sustain substantial damage, both emotionally and economically, whenever inaccurate information or fraudulent information is disseminated about them.

3.      The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4.      The CRAs sell to readily paying subscribers (i.e., retailers, landlords, lenders, automobile dealers, potential employers, and other similar interested parties) information commonly called "consumer reports," concerning individuals who may be applying for retail credit, to lease an apartment, to obtain a mortgage, auto loan, employment, or the like.

5.      "Credit is the lifeblood of the modern American economy, and for the American consumer access to credit has become inextricably tied to consumer credit scores as reported by credit reporting agencies." *Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064(AJT/TRJ), 2011 E.S. Dist. LEXIS 28896, *1, 2011 WL 1085874, at *1 (E.D. Va. Mar. 18, 2011).

6.      Congress made the following findings when it enacted the FCRA in 1970:

1)  The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

2)  An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.

3)  Consumer reporting agencies have assumed a vital role in assembling and evaluation consumer credit and other information on consumers.

4)  There is a need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. § 1681(a)(1-4). Thus, "[t]he FCRA evinces Congress' intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear 'grave responsibilities.'" *Cushman v. Trans Union*, 115 F.3d 220, 225 (3d Cir. 1997).

7.      Since 1970, when Congress enacted the FCRA, as amended, 15 U.S.C.§ 1681 *et seq.*, federal law has required CRAs to have in place and to utilize reasonable procedures "to assure the maximum possible accuracy" of the personal and financial information that they compile and sell about individual consumers.

8.      "Mixed files" create a false description and representation of a consumer's credit history.

9.      A "mixed file" occurs when personal and credit information belonging to Consumer B appears in one or more of Consumer A's credit files.

10.     The Federal Trade Commission defined a mixed credit file as a file that "refers to a Consumer Report in which some or all of the information pertains to Persons other than the Person who is the subject of that Consumer Report." *F.T.C. v. TRW, Inc.*, 784 F. Supp. 361, 362 (N.D. Tex. 1991).

11.     Mixed files are not a new phenomenon. Equifax, Experian, and Trans Union have been put on notice of the existence of mixed files and the fact that their procedures for creating

credit files, including their matching algorithms, are prone to frequently cause mixed files, for over thirty (30) years. *See Thompson v. San Antonio Retail Merchants Ass'n*, 682 F.2d 509, 511 (5th Cir. 1982).

12.     All three credit bureaus, Equifax, Experian, and Trans Union have been the subject of numerous state attorney general actions relating to their mixed file problems.

13.     In 2012, Ohio Attorney General Mike DeWine initiated a multistate investigation of the credit reporting practices of consumer reporting agencies Experian, Trans Union, and Equifax, including the incidence of mixed files. Thirty-one (31) states participated in the enforcement action, which resulted in a $6,000,000 settlement with Experian, Equifax, and Trans Union.[1]  Pursuant to the settlement, the three CRAs promised, among other things, "to implement an escalated process for handling complicated disputes – such as those involving . . . mixed files — where one consumer's information is mixed with another's."[2]

14.     In another example, in 2015, the New York Attorney General filed charges and settled claims with Equifax, Experian, and Trans Union over mixed files. *See In the Matter of Eric T. Schneiderman, Attorney General of the State of New York v. Experian Information Solutions, Inc.; Equifax Information Services, LLC; and Trans Union LLC.[3]*

15.     Notwithstanding Equifax, Experian, and Trans Union's notice and being subject  to repeated enforcement actions, mixed files persist despite consumers' unique personal identifying information, such as Social Security numbers, names, dates of birth, and addresses.

---

[1] https://www.texasattorneygeneral.gov/news/releases/attorney-general-paxton-announces-6-million-settlement-credit-reporting-agencies (last visited August 14, 2024).
[2] *Id.*
[3] https://ag.ny.gov/press-release/2015/ag-schneiderman-announces- groundbreaking-consumer-protection-settlement-three (Last visited August 14, 2024);
https://ag.ny.gov/pdfs/CRA%20Agreement%20Fully%20Executed% 203.8.15.pdf (Last visited August 14, 2024).

16.    Further, mixed files result in the disclosure of a consumer's most personal identifying and financial information absent the consumer's knowledge or consent, or both.

17.    Equifax, Experian, and Trans Union have each been sued thousands of times wherein an allegation was made that Equifax, Experian, and Trans Union violated the FCRA. Moreover, Equifax, Experian, and Trans Union are sued, at a minimum, hundreds of times each year wherein an allegation is made that they mixed a consumers' credit file with that of another person.

18.    Private FCRA lawsuits have resulted in multi-million-dollar verdicts for consumers who fall victim to a mixed credit file.

19.    For example, in 2002, the jury in *Judy Thomas v. Trans Union LLC*, District of Oregon, Case No. 00-1150-JE, found Trans Union had willfully violated the FCRA by mixing Judy Thomas's personal and credit information with another consumer's and failing to unmix them dispute Ms. Thomas' numerous disputes. The jury awarded Ms. Thomas $300,000 in actual damages and $5 million in punitive damages. Despite the verdict, Equifax, Experian, and Trans Union continue to mix consumers' credit files with other consumers' credit files.

20.    In 2007, the jury in *Angela Williams v. Equifax Information Services, LLC*, Circuit Court for Orange County Florida, Case No. 48-2003-CA-9035-0, awarded Angela Williams $219,000 in actual damages and $2.7 million in punitive damages for willfully violating the FCRA by mixing Angela Williams with another consumer and failing to unmix them despite Ms. Williams' disputes. Despite the verdict, Equifax, Experian, and Trans Union continue to mix consumers' credit files with other consumers' credit files.

21.    In 2013, the jury in *Julie Miller v. Equifax Information Services, LLC*, District of Oregon, Case No. 3:11-cv-01231-BR, awarded Julie Miller $180,000 in actual damages and $18.4

million in punitive damages for willfully violating the FCRA by mixing Julie Miller with another consumer and failing to unmix them despite Ms. Millers' numerous disputes. Despite the verdict, Equifax, Experian, and Trans Union continue to mix consumers' credit files with other consumers' credit files.

22.     Most recently, a jury assessed a $60 million verdict against Trans Union for mixing innocent American citizens with terrorists and drug dealers by matching consumers with the Office of Foreign Asset Control's "terrorist alert" list based on first and last name alone. *See Ramirez v. Trans Union, LLC,* No. 12-CV-00632- JSC, 2017 WL 5153280, at *1 (N.D. Cal. Nov. 7, 2017), *aff'd in part, vacated in part, rev'd in part sub nom. Ramirez v. TransUnion LLC*, 951 F.3d 1008 (9th Cir. 2020). Despite the verdict, Equifax, Experian, and Trans Union continue to mix consumers' credit files with other consumers' credit files.

23.     "Evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law." *Dalton v. CAI*, 257 F.3d 409, 418 (4th Cir. 2001) (noting that whether "other consumers have lodged complaints similar to Dalton's against CAI" is relevant to willfulness under the FCRA). Moreover, repeated noncompliance with statutory duties can establish that the defendants acted willfully. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 53 (2007) (punitive damages can be awarded based on "reckless disregard for a statutory duty").

24.     No less than three federal Courts of Appeal have held a consumer reporting agency violates 15 U.S.C. § 1681e(b) and may be found to have willfully violated the FCRA when it mixes a consumer's file with another consumer.

25.     Finally, the Federal Trade Commission has specifically warned consumer reporting

6

agencies, including Equifax, Experian, and Trans Union, to review their procedures when a mixed file case occurs.

26.     Despite federal and state law, Congressional mandate, federal and state enforcement actions, and thousands of consumer lawsuits, mixed credit files remain a significant problem for innocent consumers, including Plaintiff.

## THE PARTIES

27.     Plaintiff Jeremiah Barnes ("Mr. Barnes") is a natural person who, at all times material hereto, resided in the City of Inkster, County of Wayne, State of Michigan, and is a "consumer" as defined by the FCRA at 15 U.S.C. § 1681a(c).

28.     Defendant Equifax Information Services LLC ("Defendant Equifax" or "Equifax") is a foreign limited liability company authorized to do business in the State of Michigan, including in the Eastern District.

29.     Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

30.     Defendant Experian Information Solutions, Inc. ("Defendant Experian" or "Experian") is a foreign limited liability company authorized to do business in the State of Michigan, including in the Eastern District.

31.     Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

32.     Defendant Trans Union, LLC ("Defendant Trans Union" or "Trans Union") is a foreign limited liability company authorized to do business in the State of Michigan, including in the Eastern District.

33.     Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Trans Union is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

## JURISDICTION AND VENUE

34.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C.§ 1331 and 15 U.S.C. § 1681p, which allow claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

35.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTS

### Summary of the Fair Credit Reporting Act

36.     The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect consumers' rights to fairness and accuracy in the reporting of their credit information.

37.     The purpose of the FCRA is to require consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personal, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information…." 15 U.S.C. § 1681(b).

38.      The FCRA further requires that when preparing consumer reports a consumer reporting agency must follow "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

39.      The Consumer Financial Protection Bureau has long recognized that "[a]s the range and frequency of decisions that rely on credit reports have increased, so has the importance of assuring the accuracy of these reports."[4]

### The Credit Bureaus' Processing of Credit Information

40.      Equifax, Experian, and Trans Union regularly receive information from various sources around the country including banks, credit unions, automobile dealers, student loan providers, public information vendors, and others.

41.      These sources are known as "furnishers" within the credit reporting industry and under the FCRA.

42.      Equifax, Experian, and Trans Union collect information from thousands of furnishers.

43.      The process by which Equifax, Experian, and Trans Union receive, sort, and store information is largely electronic.

44.      Furnishers report credit information to Equifax, Experian, and Trans Union using coded tapes that are transmitted to Equifax, Experian, and Trans Union on a monthly basis through software known as Metro 2.

45.      Equifax, Experian, and Trans Union take the credit information reported by furnishers and create consumer credit files.

---

[4] Consumer Financial Protection Bureau, Key Dimensions and Processes in the U.S. Credit Reporting System, at 5 (December 2012).

46. Equifax, Experian, and Trans Union maintain credit files on more than 200 million consumers.

47. Credit files are updated electronically by Equifax, Experian, and Trans Union based on furnishers' reporting of new information regarding their reported accounts (sometimes referred to within the industry as "tradelines").

### The Credit Bureaus' Mixed File Problem

48. Equifax, Experian, and Trans Union know that different consumers can have similar names.

49. Equifax, Experian, and Trans Union know that different consumers can have similar Social Security numbers.

50. Equifax, Experian, and Trans Union know that different consumers with similar names can also have similar Social Security numbers.

51. Equifax, Experian, and Trans Union know that public records often do not contain identifying information such as Social Security numbers or dates of birth.

52. Equifax, Experian, and Trans Union match tradelines and public records to consumer credit files by comparing the information about the consumer associated with the tradeline or public record to the information they maintain about the consumer in the consumer's credit file or files.

53. Equifax, Experian, and Trans Union accomplish this matching of credit information to consumer credit files using certain matching algorithms or database rules.

54. Sometimes Equifax, Experian, and Trans Union's matching algorithms match information belonging to one consumer to the credit file of another consumer; resulting in what is commonly known in the industry as a mixed or merged credit file.

55.     Mixed files are not a new phenomenon. In fact, as long ago as the early 1990s, the Federal Trade Commission ("FTC") (the government agency charged with enforcement of the FCRA), entered into individual Consent Decrees with each of the three major CRAs, Equifax, Experian, and Trans Union, regarding their significant failures and deficiencies with respect to mixed files.

56.     Despite Equifax, Experian, and Trans Union's long-standing and specific knowledge of the mixed file problem, Plaintiff's credit reports were still generated by Equifax, Experian, and Trans Union containing information belonging to another consumer.

57.     A mixed or merged credit file is the result of Equifax, Experian, and Trans Union inaccurately mixing personal identifying information and credit information and/or an entire credit file belonging to one consumer into the credit file of another consumer.

58.     There are many different possible causes for the mixing of credit files but all of them relate in one way or another to the algorithms (the database rules) used by Equifax, Experian, and Trans Union to match personal identifying information and credit information, including public record information, to a particular consumer's credit file or files.

59.     The success or failure of these algorithms and rules is both a function of the rules themselves and of the information provided by the furnishers of the tradeline information to Equifax, Experian, and Trans Union.

60.     These rules also determine which credit files are selected by the algorithm and merged to create a complete consumer report.

61.     Therefore, a mixed credit file and/or report is sometimes the result of the mixing of two or more consumer credit files belonging to different consumers into one credit file and report.

11

**Plaintiff's Twin Brother Disputes Inaccurate Information in His Credit Reports
In or About 2018**

62.     In or about 2018, Plaintiff's twin brother, Jeremy Barnes, first discovered that some of his personal and credit information was appearing on Plaintiff's credit reports.

63.     Thereafter, Plaintiff's twin brother disputed the inaccurate personal and credit information belonging to Plaintiff with one or more of the named Defendants, explaining that information belonging to Plaintiff was mixed into his credit report(s) and was inaccurately reporting.

64.     Despite the fact that Defendants were thereby on notice at this time of the inaccurate reporting and mixed file issue, Defendants failed to correct Plaintiff's mixed credit files and thereafter continued to circulate false and misleading credit information regarding Plaintiff through his credit reports.

**Defendants Experian and Trans Union Fail to Provide Plaintiff a
Copy of his Credit Reports in May 2022**

65.     On or about May 25, 2022, Plaintiff requested a copy of his respective credit files from Experian and Trans Union pursuant to 15 U.S.C. § 1681g.

66.     Along with his request, Plaintiff enclosed a copy of his Social Security card and driver's license so that Experian and Trans Union would be able to properly identify him and locate his credit files.

67.     Defendants Experian and Trans Union failed to provide Plaintiff with a copy of his credit reports in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681g.

**Defendants Experian and Trans Union Fail to Provide Plaintiff a
Copy of his Credit Reports in August 2022**

68.     On or about August 23, 2022, Plaintiff mailed another letter to Experian and Trans Union requesting a copy of his respective credit files pursuant to 15 U.S.C. § 1681g.

69.     Along with his request, Plaintiff enclosed a copy of his Social Security card and driver's license so that Experian and Trans Union would be able to properly identify him and locate his credit files.

70.     Defendants Experian and Trans Union failed to provide Plaintiff with a copy of his credit reports in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681g.

**Plaintiff Disputes with the Credit Bureau Defendants in October 2022**

71.     On or about October 20, 2022, Plaintiff mailed written dispute letters to Equifax, Experian, and Trans Union disputing the inaccurate personal and credit information contained in each of his respective credit reports, which does not belong to him but, rather, belongs to another consumer, namely, Plaintiff's twin brother. Plaintiff explained that he believed that Defendants had mixed his credit files with his twin brother's credit files and further explained that he should have his own credit file, separate from his twin brother's. Plaintiff requested that Defendants Equifax, Experian, and Trans Union reinvestigate the disputed information, correct their reporting (by unmixing the mixed file), and send him a corrected copy of his credit reports.

72.     Plaintiff's written disputes specifically included his full name, date of birth, Social Security number, and current address so that Defendants Equifax, Experian, and Trans Union would be able to properly identify him and locate his credit files.

73.     Along with his October 2022 dispute letters, Plaintiff enclosed a copy of his Social Security card and a copy of his driver's license.

**The Credit Bureaus' Method for Considering Consumer Credit Report Disputes**

74.     The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. *See* 15 U.S.C. § 1681i(a)(5)(D).

75.     The credit bureaus, including Defendants, have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of

performance. e-OSCAR allows the credit bureaus to create and data furnishers to respond to disputes initiated by consumers by routing credit reporting agency- created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

76.     That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro II." It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

77.     Metro II is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

78.     Metro II codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

79.     The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

80.     These ACDV "fields" have various titles for the many substantive areas into which the Metro II codes can be entered.

81.     Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

82.     The data furnishers then have an obligation under the FCRA to conduct a reasonable investigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit

account information is accurate and/or belongs to the disputing consumer. *See* 15 U.S.C. § 1681s-2(b).

83.     Once the data furnisher completes its investigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via eOSCAR.

**Defendants Fail to Respond to Plaintiff's October 2022 Dispute**

84.     Defendants Equifax, Experian, and Trans Union failed to conduct a reasonable reinvestigation and failed to respond to Plaintiff's October 2022 dispute.

85.     Defendants Equifax, Experian, and Trans Union failed to conduct a reasonable reinvestigation, or any reinvestigation whatsoever, of the personal and credit information disputed by Plaintiff in October 2022, in violation of 15 U.S.C. § 1681i.

86.     Defendants Equifax, Experian, and Trans Union failed to provide Plaintiff with a copy of his credit reports in October 2022, in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681g.

**Plaintiff Disputes with the Credit Bureau Defendants in January 2023**

87.     On or about January 3, 2023, Plaintiff mailed written dispute letters to Equifax, Experian, and Trans Union disputing the inaccurate personal and credit information contained in each of his respective credit reports, which does not belong to him, but rather belongs to another consumer, namely, Plaintiff's twin brother. Plaintiff explained that he believed that Defendants had mixed his credit files with his twin brother's credit files and further explained that he should have his own credit file, separate from his twin brother's. Plaintiff requested that Defendants Equifax, Experian, and Trans Union reinvestigate the disputed information, correct their reporting,

15

and send him a corrected copy of his credit reports.

88.    Plaintiff's written disputes specifically included his full name, date of birth, Social Security number, and current address so that Defendants Equifax, Experian, and Trans Union would be able to properly identify him and locate his credit files.

**Defendant Trans Union's Response to Plaintiff's January 2023 Dispute**

89.    Trans Union failed to conduct a reasonable reinvestigation and failed to respond to Plaintiff's January 2023 dispute.

90.    Trans Union failed to conduct a reasonable reinvestigation, or any reinvestigation whatsoever, of the personal and credit information disputed by Plaintiff in January 2023, in violation of 15 U.S.C. § 1681i.

**Defendant Experian's Response to Plaintiff's January 2023 Dispute**

91.    Experian failed to conduct a reasonable reinvestigation and failed to respond to Plaintiff's January 2023 dispute.

92.    On or about February 8, 2023, having not heard back from Experian and concerned by Experian's continued inaccurate reporting, Plaintiff accessed a copy of his Experian credit report.

93.    Upon review, Plaintiff was shocked, stressed, and frustrated to discover that Experian failed to remove the inaccurate personal and credit information contained in his Experian credit report, which does not belong to him but, rather, belongs to another consumer, namely, Plaintiff's twin brother.

94.    Experian failed to conduct a reasonable reinvestigation, or any reinvestigation whatsoever, of the personal and credit information disputed by Plaintiff in January 2023, in violation of 15 U.S.C. § 1681i.

**Defendant Equifax's Response to Plaintiff's January 2023 Dispute**

95.     Equifax failed to conduct a reasonable reinvestigation and failed to respond to Plaintiff's January 2023 dispute.

96.     On or about February 8, 2023, having not heard back from Equifax and concerned by Equifax's continued inaccurate reporting, Plaintiff accessed a copy of his Equifax credit report.

97.     Upon review, Plaintiff was shocked, stressed, and frustrated to discover that Equifax failed to remove the previously disputed inaccurate personal and credit information contained in his Equifax credit report, which does not belong to him but, rather, belongs to another consumer, namely, Plaintiff's twin brother, which appeared on Plaintiff's Equifax credit report as follows:

      a.  Name
         i.  Jeremy Barnes

      b.  Addresses
         i.  18706 Sumner, Redford, MI 48240
        ii.  12645 Memorial St., Apt. 302, Detroit, MI 48227
       iii.  4234 High St., Ecorse, MI 48229

      c.  Employer
         i.  New Center Stamping

98.     Upon further review, Plaintiff also discovered that Equifax was continuing to report the following accounts that do not belong to him but, rather, belong to his twin brother, which appeared on Plaintiff's Equifax credit report as follows:

         i.  Huntington National Bank
           Account Number: xxxxxxxxxxxx 8505
           Account Status: CHARGE_OFF
           Credit Limit: $500
           Terms Frequency: MONTHLY
           Balance: $154
           Amount Past Due: $154
           Activity Designator: CLOSED
           Loan Type: Line of Credit

Date of First Delinquency: Jun 2022
Owner: INDIVIDUAL
Account Type: REVOLVING
Term Duration: 0
Date Opened: November 01, 2021
Date of Last Payment: Apr 2022
Delinquency First Reported: Jul 2022
Charge Off Amount: $154

ii.    Credit Acceptance Corporation
Account Number: xxxxx 4695
Account Status: PAYS_AS_AGREED
High Credit: $15,656
Terms Frequency: MONTHLY
Balance: $15,233
Owner: INDIVIDUAL
Account Type: INSTALLMENT
Date Opened: Dec 10, 2022
Scheduled Payment Amount: $441

iii.   American Credit Acceptance
Account Number: xxxxxxx 3053
Account Status: PAYS_AS_AGREED
High Credit: $8,807
Terms Frequency: MONTHLY
Balance: $7,346
Actual Payment Amount: $239
Loan Type: Auto
Owner: INDIVIDUAL
Account Type: INSTALLMENT
Terms Duration: 7
Date Opened: Jul 21, 2020
Date of Last Payment: Dec 2022
Scheduled Payment Amount: $239

99.    Equifax failed to conduct a reasonable reinvestigation, or any reinvestigation whatsoever, of the personal and credit information disputed by Plaintiff in January 2023, in violation of 15 U.S.C. § 1681i.

100.   Additionally, Plaintiff was worried and anxious when he discovered that not only was Equifax continuing to report his twin brother's personal and credit information in his report, but was also reporting several hard inquiries that do not belong to him, which appeared on his

Equifax credit report as follows:

    i.   Capital One
      Inquiry Date: Dec 09, 2022

    ii.   Bank of Missouri
      Inquiry Date: Mar 13, 2021

   101.   Plaintiff did not apply for credit on either of the two (2) above-referenced occasions, nor did Defendant Equifax have a permissible purpose to furnish Plaintiff's credit report to any of the above-referenced creditors in response to Plaintiff's twin brother's credit applications, because Plaintiff did not authorize Equifax, or any of the Credit Bureau Defendants for that matter, to provide such report(s) and the transaction did not consist of a firm offer of credit or insurance to Plaintiff. Thus, Equifax's furnishing of Plaintiff's credit reports in response to these two inquiries was without a permissible purpose, in violation of 15 U.S.C. § 1681b(c)(1).

### Rocket Mortgage Denies Plaintiff's Home Mortgage Application in February 2023 Due to Defendants' Inaccurate Reporting

   102.   On or about February 14, 2023, Plaintiff applied for a home mortgage loan through Rocket Mortgage.

   103.   As part of Plaintiff's home mortgage loan application, he authorized Rocket Mortgage to access his credit report(s).

   104.   On or about February 14, 2023, Rocket Mortgage requested Plaintiff's credit reports and scores from Defendants Equifax, Experian, and Trans Union in the form of a Merged Infile Credit Report from Xactus.

   105.   Xactus purchased Plaintiff's credit files from Defendants Equifax, Experian, and Trans Union and assembled and merged his credit information into a Merged Infile Credit Report, which it sold to Rocket Mortgage.

   106.   At the time of Plaintiff's February 14, 2023, mortgage application with Rocket

Mortgage, Defendants published credit reports regarding Plaintiff that were mixed with another consumer's personal and credit account information, namely, Plaintiff's twin brother.

107.    Plaintiff's mortgage application with Rocket Mortgage was denied as a direct result of the inaccurate information contained within his credit reports as published by Defendants, which adversely impacted his debt-to-income ratio, credit scores, and overall creditworthiness.

108.    Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy of the credit information they published and maintain concerning Plaintiff.

### Defendants Experian and Trans Union Fail to Provide Plaintiff a Copy of his Credit Reports in March 2023

109.    On or about March 3, 2023, Plaintiff mailed another letter to Experian and Trans Union requesting a copy of his respective credit files pursuant to 15 U.S.C. § 1681g.

110.    Defendant Experian failed to respond to Plaintiff's request.

111.    On or about March 8, 2023, Defendant Trans Union responded to Plaintiff's request with a letter stating, in relevant part:

> Based on the information you provided, we are unable to locate a credit report for you. If you would like to send additional verified information, we will be happy to re-check our records.

112.    Defendants Experian and Trans Union failed to provide Plaintiff with a copy of his credit reports in response to his March 2023 request for same, in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681g.

### Defendant Trans Union Fails to Provide Plaintiff a Copy of his Credit Report in April 2023

113.     On or about April 6, 2023, Plaintiff mailed another letter to Trans Union requesting a copy of his credit file pursuant to 15 U.S.C. § 1681g.

114.     Along with his request, Plaintiff included a copy of the correspondence he received from Trans Union, dated March 8, 2023, which was mailed to his current address, along with a copy of his Social Security card, a copy of his driver's license, and a copy of his birth certificate, all of which served as further proof of his identity.

115.     On or about April 13, 2023, Defendant Trans Union responded to Plaintiff's request with a postcard stating, in relevant part:

> The documents you sent as proof of your current mailing
> address were unacceptable.

116.     Defendant Trans Union failed to provide Plaintiff with a copy of his credit report in response to his April 2023 request, in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681g.

### Plaintiff Confirms Defendant Experian's Continued Inaccurate Credit Reporting in April 2023

117.     On or about April 6, 2023, concerned by Experian's continued inaccurate reporting, Plaintiff requested a copy of his Experian credit report.

118.     Soon thereafter, Plaintiff received a copy of his Experian credit report dated April 14, 2023.

119.     Upon review, Plaintiff was frustrated to discover that Experian was reporting the following accounts and items of information that do not belong to him, which appeared on his Experian credit report as follows:

a.   Accounts

i.  American Credit Acceptance
    Partial Account Number: 9012393….
    Status: (Feb 2023) Open.
    Date Opened: Jul 2020
    Address ID #: 0109845352
    Type: Auto Loan
    Responsibility: Individual
    Terms: 72 Months
    Monthly Payment: $239
    Credit limit or original amount: $8,807
    Recent Payment: $500 as of 02/28/2023
    Recent Balance: $7,140 as of Feb 2023

ii.  I C System Inc.
     Partial Account Number: 147977082
     Status: (Dec 2022) Collection account. $2,653 past due as of Apr 2023.
     Date Opened: Dec 2022
     Address ID #: 0109742771
     Original Creditor: ATT MOBILITY
     Type: Collection
     Responsibility: Individual
     Terms: 1 Months
     Credit limit or original amount: $2,653
     Recent Balance: $2,653 as of Apr 2023

iii.  State of MI/Office Child Support
      Partial Account Number: 8220141672456558428986558....
      Status: (Mar 2023): Collection account. $3,087 past due as of Mar 2023.
      Date Opened: Feb 2015
      Address ID #: 0109644004
      Type: Family Support
      Responsibility: Individual
      Terms: 1 Months
      Credit limit or original amount: $4,414
      Recent Balance: $3,087 as of Mar 2023

iv.  State of MI/Office Child Support
     Partial Account Number: 8220141672466558428996558....
     Status: (Mar 2023) Collection account. $2,978 past due as of Mar 2023.
     Date Opened: Feb 2015
     Address ID #: 0109644004
     Type: Family Support
     Responsibility: Individual
     Terms: 1 Months
     Credit limit or original amount: $5,282
     Recent Balance: $2,978 as of Mar 2023

    v.    State of MI/Office Child Support
Partial Account Number: 8220181583026558428976558….
Status: (March 2023) Collection account. $1,010 past due as of Mar 2023.
Date Opened: Jan 2019
Address ID #: 0109644004
Type: Family Support
Responsibility: Individual
Terms: 1 Months
Credit limit or original amount: $1,410
Recent Balance: $1,010 as of Mar 2023

    vi.    The Huntington Ntl Bank
Partial Account Number: 585379000394….
Status: (Jul 2022) Account charged off. $154 written off. $154 past due as of Mar 2023.
Date Opened: Nov 2021
Address ID #: 0109845352
Type: Line of Credit
Responsibility: Individual
Credit limit or original amount: $500
High Balance: $500
Recent Balance: $154 as of Mar 2023

    vii.    Credit Acceptance Corporation
Partial Account Number: 10789….
Status: (Mar 2023) Open/Never late.
Type: Auto Loan
Terms: 60 Months
Date Opened: Dec 2022
Monthly Payment: $441
Address ID #: 0109845352
Credit limit or original amount: $15,656
Recent Payment: $300 as of 03/10/2023
Recent Balance: $15,153 as of Mar 2023
Responsibility: Individual

b.  Personal Information

    i.    Names Reported:
Jeremy Barnes
Jeremy J Barnes

    ii.    Addresses Reported:
18706 Sumner

Redford, MI 48240-1760

18706 Sumner
Redford Charter Township, MI 48240

18607 Sumner
Redford Twp., MI 48240-1761

186607 Sumner
Redford Twp., MI 48240

4224 High St.
Ecorse, MI 48229-1514

108 Charles St.
Brighton, IL 62012-1192

iii.   Social Security Numbers Reported:
       XXX-XX-0323
       XXX-XX-2203

iv.   Former or Current Employers Reported:
       New Center Stamping

120.   Additionally, Plaintiff was worried and anxious when he discovered that not only was Experian continuing to report his twin brother's personal and credit information in his report but that Experian was also reporting several hard inquiries that do not belong to him, which appeared on his Experian credit report as follows:

i.     Michigan Schools and Gov
       Inquiry Date: Jan 24, 2023

ii.    ESB/Harley Davidson Cred
       Inquiry Date: Jan 19, 2023

iii.   US Bank Consolidated
       Inquiry Date: Jan 19, 2023

iv.    Capital One Auto Finance

Inquiry Date: Dec 09, 2022

v.      Credit Acceptance
        Inquiry Date: Dec 09, 2022

vi.     Ford Cred
        Inquiry Date: Dec 09, 2022

vii.    Now Com/F & M Auto Sales
        Inquiry Date: Dec 09, 2022

viii.   Credit One Bank
        Inquiry Date: Jul 11, 2022

ix.     ESB/Harley Davidson Cred
        Inquiry Date: Apr 08, 2022

121.    Plaintiff did not apply for credit on any of the nine (9) above-referenced occasions, nor did Defendant Experian have a permissible purpose to furnish Plaintiff's credit report to any of the above-referenced creditors in response to Plaintiff's twin brother's credit applications, because Plaintiff did not authorize Experian, or any of the Credit Bureau Defendants for that matter, to provide such report(s), and the transaction did not consist of a firm offer of credit or insurance to Plaintiff. Thus, Experian's furnishing of Plaintiff's credit reports in response to these inquiries was without a permissible purpose in violation of 15 U.S.C. § 1681b(c)(1).

**Defendant Trans Union Fails to Provide Plaintiff a**
**Copy of his Credit Report in May 2023**

122.    On or about May 2, 2023, Plaintiff mailed another letter to Trans Union requesting a copy of his credit file pursuant to 15 U.S.C. § 1681g.

123.    Along with his request, Plaintiff included a copy of the correspondence he received from Trans Union, dated April 13, 2023, which was mailed to his current address, and requested two documents as further proof of his current address. As requested by Trans Union in

its April 13, 2024, correspondence, Plaintiff also enclosed a pay stub and utility bill, dated April 24, 2023, and April 25, 2023, respectively, showing additional proof of his current address.

124.    Defendant Trans Union failed to respond to Plaintiff's May 2023 request.

125.    Defendant Trans Union failed to provide Plaintiff with a copy of his credit report in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681g.

**Plaintiff Confirms Trans Union's Inaccurate Reporting in June 2023**

126.    On or about June 15, 2023, Plaintiff mailed another letter to Trans Union requesting a copy of his credit file pursuant to 15 U.S.C. § 1681g.

127.    In response, Trans Union *finally* provided Plaintiff with a copy of his Trans Union credit file, dated June 22, 2023.

128.    Upon review, Plaintiff was frustrated to discover that Trans Union was reporting the following inaccurate credit accounts and items of information that do not belong to him, which appeared on his Trans Union credit report as follows:

    a.   Accounts

        i.   American Credit Acceptance
            Account Number: 9012393****
            Date Opened: 07/21/2020
            Responsibility: Individual Account
            Account Type: Installment Account
            Loan Type: AUTOMOBILE
            Pay Status: Account 30 Days Past Due Date
            Terms: $239 per month, paid Monthly for 72 months
            >Maximum Delinquency of 30 days in 04/2022 for $211 and in 05/2023 for $198<

        ii.   Credit Acceptance Corp
            Account Number: 10789****
            Date Opened: 12/10/2022
            Responsibility: Individual Account
            Account Type: Installment Account
            Loan Type: AUTOMOBILE

Pay Status: Account 60 Days Past Due Date
Terms: $441 per month, paid Monthly for 60 months
>Maximum Delinquency of 60 days in 06/2023 for $713<

iii.   Huntington National Bank
Account Number: 585379000394****
Date Opened: 11/01/2021
Responsibility: Individual Account
Account Type: Line of Credit Account
Loan Type: LINE OF CREDIT
Pay Status: Charged Off
Terms: Paid Monthly
Date Closed: 07/31/2022
>Maximum Delinquency of 60 days in 06/2022<

iv.   I C Systems Collections
Account Number: 14797****
Placed for collection: 12/23/2022
Responsibility: Individual Account
Account Type: Open Account
Loan type: COLLECTION AGENCY/ATTORNEY
Balance: $2,653
Original Creditor: ATT MOBILITY (Cable/Cellular)
Past Due: $2,653
Pay Status: In Collection

b.   Personal Information

i.   Social Security Number Reported:
XXX-XX-0323

ii.   Name Reported:
Jeremy J. Barnes

iii.   Addresses Reported:
18706 Sumner, Detroit, MI 48240-1760
18706 Sumner, Redford, MI 48240-1760

iv.   Employer Reported:
New Center Stamping

129.   Additionally, Plaintiff was worried and anxious when he discovered that not only

was Trans Union continuing to report his twin brother's personal and credit information in his

report, but was also reporting several inquiries that do not belong to him, which appeared on Plaintiff's Trans Union credit report as follows:

      i.    Open Road Finance Corporation
            Inquiry Date: 01/19/2023

     ii.    Eaglemark S BK
            Inquiry Date: 01/19/2023

    iii.    OneMain Financial
            Inquiry Date: 12/09/2022

    iv.    Capital One Auto Finance
            Inquiry Date: 12/09/2022

     v.    First Premier Bank
            Inquiry Date: 03/16/2022

130.    Plaintiff did not apply for credit on any of the five (5) above-referenced occasions, nor did Defendant Trans Union have a permissible purpose to furnish Plaintiff's credit report to any of the above-referenced creditors in response to Plaintiff's twin brother's credit applications, because Plaintiff did not authorize Trans Union, or any of the Credit Bureau Defendants for that matter, to provide such report(s), and the transaction did not consist of a firm offer of credit or insurance to Plaintiff. Thus, Trans Union's furnishing of Plaintiff's credit reports in response to these inquiries was without a permissible purpose in violation of 15 U.S.C. § 1681b(c)(1).

**Plaintiff Disputes with the Credit Bureau Defendants in July 2023**

131.    On or about July 14, 2023, Plaintiff mailed written dispute letters to Equifax, Experian, and Trans Union specifically disputing the above-referenced items of inaccurate personal and credit information contained in each of his respective credit reports, which do not belong to him but, rather, belong to another consumer, namely, Plaintiff's twin brother. Plaintiff explained that he believed that Defendants had mixed his credit files with his twin brother's credit files and further explained that he should have his own credit file, separate from his twin brother's.

Plaintiff requested that Defendants Equifax, Experian, and Trans Union reinvestigate the disputed information, correct their reporting, and send him a corrected copy of his credit reports.

132.    Plaintiff's written disputes specifically included his full name, date of birth, Social Security number, and current address so that Defendants Equifax, Experian, and Trans Union would be able to properly identify him and locate his credit files.

133.    Along with his July 2023 dispute letters, Plaintiff enclosed a copy of his credit reports, respective to each bureau, a photocopy of his Social Security card, a photocopy of his driver's license, and a photocopy of his birth certificate.

### Defendant Experian's Response to Plaintiff's July 2023 Dispute

134.    Experian failed to conduct a reasonable reinvestigation and failed to respond to Plaintiff's July2023 dispute.

135.    On or about July 25, 2023, having not heard back from Experian and concerned by Experian's continued inaccurate reporting, Plaintiff accessed a copy of his Experian credit report.

136.    Upon review, Plaintiff was shocked, stressed, and frustrated to discover that Experian failed to remove the inaccurate personal and credit information contained in his Experian credit report, which does not belong to him but, rather, belongs to another consumer, namely, Plaintiff's twin brother.

137.    Experian failed to conduct a reasonable reinvestigation, or any reinvestigation whatsoever, of the personal and credit information disputed by Plaintiff in July 2023, in violation of 15 U.S.C. § 1681i.

### Defendant Trans Union's Response to Plaintiff's July 2023 Dispute

138.    On or about August 8, 2023, Plaintiff received dispute results from Trans Union

at his current address. However, Plaintiff was shocked and confused as the dispute results were addressed to "Jeremy J. Barnes."

139. Upon review, Plaintiff was shocked, stressed, and frustrated to discover that Trans Union failed to remove the inaccurate personal and credit information contained in his Trans Union credit report, which does not belong to him but, rather, belongs to another consumer, namely, Plaintiff's twin brother.

140. Trans Union failed to conduct a reasonable reinvestigation, or any reinvestigation whatsoever, of the personal and credit information disputed by Plaintiff in July 2023, in violation of 15 U.S.C. § 1681i.

**Defendant Equifax's Response to Plaintiff's July 2023 Dispute**

141. On or about July 26, 2023, in response to Plaintiff's July 2023 dispute, Equifax mailed Plaintiff correspondence requesting additional proof of his identity.

142. Equifax failed to conduct a reasonable reinvestigation, or any reinvestigation whatsoever, of the personal and credit information disputed by Plaintiff in July 2023, in violation of 15 U.S.C. § 1681i.

**Plaintiff Disputes with Defendant Equifax on Several Occasions in August 2023**

143. On or about August 2, 2023, in response to Equifax's July 26, 2023, correspondence requesting additional proof of his identity, Plaintiff mailed Equifax a copy of the correspondence he received at his current address from Equifax, dated July 26, 2023, a photocopy of his Social Security card, a photocopy of his driver's license, and a photocopy of his birth certificate. Plaintiff also enclosed a copy of his July 2023 dispute letter and all enclosures, again disputing the above-referenced items of inaccurate personal and credit information contained in each of his Equifax credit reports, which do not belong to him but, rather, belong to another

30

consumer, namely, Plaintiff's twin brother. Plaintiff explained that he believed that Equifax had mixed his credit file with his twin brother's credit file and further explained that he should have his own credit file, separate from his twin brother's. Plaintiff requested that Defendant Equifax reinvestigate the disputed information, correct its reporting, and send him a corrected copy of his credit report.

144. On or about August 15, 2023, in response to Plaintiff's August 2, 2023, dispute, Equifax mailed Plaintiff correspondence again requesting additional proof of his identity.

145. Equifax failed to conduct a reasonable reinvestigation, or any reinvestigation whatsoever, of the personal and credit information disputed by Plaintiff in August 2023, in violation of 15 U.S.C. § 1681i.

146. On or about August 22, 2023, in response to Equifax's August 15, 2023, correspondence requesting additional proof of his identity, Plaintiff mailed Equifax a copy of the correspondence he received at his current address from Equifax, dated July 26, 2023, a photocopy of his Social Security card, a photocopy of his driver's license, and a photocopy of his birth certificate. Plaintiff also enclosed a copy of his July 2023 dispute letter and all enclosures, again disputing the above-referenced items of inaccurate personal and credit information contained in each of his Equifax credit reports, which do not belong to him but, rather, belong to another consumer, namely, Plaintiff's twin brother. Plaintiff explained that he believed that Equifax had mixed his credit file with his twin brother's credit file and further explained that he should have his own credit file, separate from his twin brother's. Plaintiff requested that Defendant Equifax reinvestigate the disputed information, correct its reporting, and send him a corrected copy of his credit report.

**Defendant Equifax's Response to Plaintiff's August 2023 Dispute**

147.    On or about August 30, 2023, in response to Plaintiff's August 22, 2023, dispute, Equifax mailed Plaintiff two separate items of correspondence: (1) a letter again requesting additional proof of his identity, now for a third time, and (2) a letter advising Plaintiff of what to do if he believed he was the victim of fraud or identity theft.

148.    On or about September 18, 2023, Plaintiff *finally* accessed a current copy of his Equifax report.

149.    Upon review, Plaintiff was shocked to discover that Equifax was still reporting the following previously disputed information that does not belong to him, which appeared on his Equifax credit report as follows:

a.  Accounts

    i.  Huntington National Bank
       Account Number: xxxxxxxxxxx 8505
       Account Status: CHARGE_OFF
       Credit Limit: $500
       Terms Frequency: MONTHLY
       Balance: $154
       Amount Past Due: $154
       Activity Designator: CLOSED
       Loan Type: Line of Credit
       Date of First Delinquency: Jun 2022
       Owner: INDIVIDUAL
       Account Type: REVOLVING
       Term Duration: 0
       Date Opened: November 01, 2021
       Date of Last Payment: Apr 2022
       Delinquency First Reported: Jun 2022
       Charge Off Amount: $154

    ii.  American Credit Acceptance
       Account Number: xxxxxxx 3053
       Account Status: PAYS_AS_AGREED
       High Credit: $8,807
       Terms Frequency: MONTHLY
       Balance: $0
       Actual Payment Amount: $357
       Loan Type: Auto

Owner: INDIVIDUAL
Account Type: INSTALLMENT
Terms Duration: 7
Date Opened: Jul 21, 2020
Date of Last Payment: Aug 2023

    iii.   Credit Acceptance Corporation
Account Number: xxxxx 4695
Account Status: NOT_MORE_THAN_THREE_PAYMENTS_
PAST_DUE
High Credit: $15,656
Terms Frequency: MONTHLY
Balance: $15,255
Loan Type: Auto
Owner: INDIVIDUAL
Account Type: INSTALLMENT
Date Opened: Dec 10, 2022
Scheduled Payment Amount: $441

b.  Personal Information

    i.   Social Security Number Reported:
XXX-XX-0323

    ii.   Name Reported:
Jeremy Barnes

150.    Equifax failed to conduct a reasonable reinvestigation, or any reinvestigation whatsoever, of the personal and credit information disputed by Plaintiff in August 2023, in violation of 15 U.S.C. § 1681i.

**Experian Publishes Inaccurate Information to Plaintiff's**
**Prospective Employer in August 2023**

151.    In or about August 2023, Plaintiff applied for a job with Norfolk Southern Railroad.

152.    On or about August 17, 2023, as part of its hiring process, Norfolk Southern Railroad ordered an employment report regarding Plaintiff from First Advantage.

153.     On or about August 17, 2023, Defendant Experian published inaccurate personal and credit account information regarding Plaintiff to First Advantage.

154.     As a result of Experian's inaccurate reporting, Plaintiff's "Social Security Verification" section of the employment report was returned as "Decisional," which caused a delay in Plaintiff's start date with Norfolk Southern Railroad.

### Flagstar Bank Denies Plaintiff's Credit Application in August 2023 Due to Defendants' Inaccurate Reporting

155.     On or about August 24, 2023, Plaintiff applied for a personal loan through Flagstar Bank, N.A. ("Flagstar Bank").

156.     As part of Plaintiff's loan application, he authorized Flagstar Bank to access his credit report(s).

157.     At the time of Plaintiff's August 24, 2023, loan application with Flagstar Bank, Defendants published credit reports regarding Plaintiff that were mixed with another consumer's personal and credit account information, namely, Plaintiff's twin brother.

158.     Plaintiff's loan application with Flagstar Bank was denied as a direct result of the inaccurate information contained within his credit reports, as published by one or more Defendant(s), including Trans Union, which adversely impacted his debt-to-income ratio, credit scores, and overall creditworthiness.

159.     Defendant(s) violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy of the credit information they published and maintain concerning Plaintiff.

### Plaintiff's September 2023 Disputes with the Credit Bureau Defendants

160.     On or about September 29, 2023, Plaintiff mailed written dispute letters to Equifax, Experian, and Trans Union disputing the above-referenced personal and credit

information contained in his credit reports, which does not belong to him. Plaintiff requested that Defendants Equifax, Experian, and Trans Union reinvestigate the disputed information, correct their reporting, and send him a corrected copy of his credit reports.

161.     Plaintiff's written disputes specifically included his full name, date of birth, Social Security number, and current address so that Defendants Equifax, Experian, and Trans Union would be able to properly identify him and locate his credit files. Along with his dispute letters, Plaintiff also attached a copy of his Equifax, Experian, and Trans Union credit reports and dispute results, if any, to each respective bureau; a photocopy of his Social Security card; a photocopy of his driver's license; and a photocopy of his twin brother's driver's license evidencing the fact that they are two separate people.

**Defendant Equifax's Response to Plaintiff's September 2023 Dispute**

162.     Equifax failed to conduct a reasonable reinvestigation, or any reinvestigation whatsoever, of the personal and credit information disputed by Plaintiff in violation of 15 U.S.C. § 1681i.

163.     Instead, on or about October 11, 2023, Equifax mailed Plaintiff two separate items of correspondence: (1) a letter again requesting additional proof of his identity, now for a fourth time, and (2) a letter advising Plaintiff of what to do if he believed he was the victim of fraud or identity theft.

**Defendant Experian's Response to Plaintiff's September 2023 Dispute**

164.     On or about October 5, 2023, and October 12, 2023, in response to Plaintiff's September 2023 dispute, Experian mailed Plaintiff four separate sets of dispute results. Additionally, on or about October 12, 2023, Experian mailed Plaintiff a copy of his Experian credit report.

165.     Upon review of the October 5, 2023, and October 12, 2023, dispute results and his Experian credit report, dated October 12, 2023, Plaintiff was shocked to discover that Experian failed to remove the following disputed information, which continued to appear on his Experian credit report as follows:

a.   Personal Information

   i.   Names Reported:
        Jeremy Barnes

   ii.   Addresses Reported:
         18706 Sumner
         Redford, MI 48240-1760

         18706 Sumner
         Redford Charter Township, MI 48240

         18607 Sumner
         Redford Twp., MI 48240-1761

         186607 Sumner
         Redford Twp., MI 48240

         4224 High St.
         Ecorse, MI 48229-1514

         108 Charles St.
         Brighton, IL 62012-1192

   iii.   Social Security Numbers Reported:
          XXX-XX-0323

   iv.   Former or Current Employers Reported:
         New Center Stamping

b.   Inquiries

   i.   Credit Acceptance

Inquiry Date: Dec 09, 2022

  ii. Credit One Bank
    Inquiry Date: Jul 11, 2022

  iii. ESB/Harley Davidson Cred
    Inquiry Date: Apr 08, 2022

166. Experian failed to conduct a reasonable reinvestigation of the personal and credit information disputed by Plaintiff in September 2023, in violation of 15 U.S.C. § 1681i.

167. Additionally, Plaintiff was worried and anxious when he discovered that not only was Experian continuing to report his twin brother's personal and credit information, but was also reporting a new hard inquiry that belongs to his twin brother, which was appearing on Plaintiff's Experian credit report as follows:

  iv. ESB/Harley Davidson Cred
    Inquiry Date: Aug 14, 2023

168. Plaintiff did not apply for credit with Harley Davidson on August 14, 2023, nor did Defendant Experian have a permissible purpose to furnish Plaintiff's credit report to Harley Davidson in response to Plaintiff's twin brother's credit application, because Plaintiff did not authorize Experian, or any of the Credit Bureau Defendants for that matter, to provide such report(s), and the transaction did not consist of a firm offer of credit or insurance to Plaintiff. Thus, Experian's furnishing of Plaintiff's credit report was without a permissible purpose in violation of 15 U.S.C. § 1681b(c)(1).

169. Finally, Plaintiff discovered that Experian was now reporting the following collections account, opened in June 2023, that does not belong to him, which appeared on his Experian credit report as follows:

  b. Credit Account

      i.  ENHANCED RECOVERY
          Partial Account #: 246017715
          Status (Jun 2023): Collection account. $2,653 past due as of Oct 2023.
          Date Opened: Jun 2023
          Address ID #: 0970026960
          Original Creditor: AT&T
          Type: Collection
          Responsibility: Individual
          Credit limit or original amount: $2,653
          Recent balance: $2,653 as of Oct 2023

**Defendant Trans Union's Response to Plaintiff's September 2023 Dispute**

170.    Trans Union failed to conduct a reasonable reinvestigation and failed to respond to Plaintiff's September 2023 dispute.

171.    Trans Union failed to conduct a reasonable reinvestigation, or any reinvestigation whatsoever, of the personal and credit information disputed by Plaintiff in September 2023, in violation of 15 U.S.C. § 1681i.

**Plaintiff Disputes with the Credit Bureau Defendants in December 2023**

172.    On or about December 12, 2023, Plaintiff mailed another written dispute letter to Defendants Equifax, Experian, and Trans Union disputing the above-referenced information that does not belong to him. Plaintiff requested that Defendants reinvestigate the disputed information, correct their reporting, and send him a corrected copy of his credit reports.

173.    Plaintiff's written disputes specifically included his full name, date of birth, Social Security number, and current address so that Defendants Equifax, Experian, and Trans Union would be able to properly identify him and locate his credit files. Along with his dispute letters, Plaintiff also attached a copy of his Equifax, Experian, and Trans Union credit reports and dispute results, if any, to each respective bureau; a photocopy of his Social Security card; a photocopy of his driver's license; and a photocopy of his twin brother's driver's license evidencing the fact that they are two separate people.

**Defendant Experian's Response to Plaintiff's December 2023 Dispute**

174.    On or about December 19, 2023, Experian mailed Plaintiff a copy of his dispute results.

175.    Upon review, Plaintiff was relieved to discover that Experian finally removed the inaccurate information that does not belong to him from his Experian credit report.

**Defendant Equifax's Response to Plaintiff's December 2023 Dispute**

176.    Equifax failed to conduct a reasonable reinvestigation, or any reinvestigation whatsoever, of the personal and credit information disputed by Plaintiff in December 2023, in violation of 15 U.S.C. § 1681i.

177.    Instead, on or about December 21, 2023, Equifax mailed Plaintiff two separate items of correspondence: (1) a letter again requesting additional proof of his identity, now for a fifth time, and (2) a letter advising Plaintiff of what to do if he believed he was the victim of fraud or identity theft.

**Defendant Trans Union's Response to Plaintiff's December 2023 Dispute**

178.    On or about December 18, 2023, in response to Plaintiff's December 2023 dispute, Trans Union mailed Plaintiff correspondence stating, in relevant part:

> After reviewing your dispute request, we found the information does not currently appear on your TransUnion credit report. It's possible the information was updated before we reviewed your report or it was reported by one of the other credit reporting companies.
>
> What to Do Next
> We recommend reviewing your credit reports again.

179.    Trans Union failed to conduct a reasonable reinvestigation, or any reinvestigation whatsoever, of the personal and credit information disputed by Plaintiff in December 2023, in violation of 15 U.S.C. § 1681i.

180.     Furthermore, Trans Union did not enclose a copy of Plaintiff's credit report despite his request for the same, in violation of 15 U.S.C. § 1681g.

**Defendants Fail to Provide Plaintiff a
Copy of his Credit Reports in January 2024**

181.     On or about January 4, 2024, still concerned by Defendants' inaccurate reporting, Plaintiff requested a copy of his Equifax, Experian, and Trans Union credit files pursuant to 15 U.S.C. § 1681g.

182.     Plaintiff was unable to access his reports online.

183.     Defendants failed to provide Plaintiff with a copy of his credit reports in January 2024, in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681g.

**Plaintiff Disputes with Defendant Equifax in January 2024**

184.     On or about January 16, 2024, Plaintiff mailed another written dispute letter to Defendant Equifax disputing the above-referenced personal and credit information that does not belong to him. Plaintiff requested that Defendant Equifax reinvestigate the disputed information, correct its reporting, and send him a corrected copy of his credit report.

185.     Plaintiff's written dispute specifically included his full name, date of birth, Social Security number, and current address so that Defendant Equifax would be able to properly identify him and locate his credit files. Along with his dispute letter, Plaintiff also attached a copy of his Equifax credit report, dated September 18, 2023, containing the inaccurate information; a copy of his dispute letter to Equifax, dated December 12, 2023; a copy of correspondence he received from Equifax, dated December 21, 2023, requesting proof of his identification and current address; a recent paystub, dated December 1, 2023, as proof of his current address; a photocopy of his driver's license as proof of his identity and current address; a photocopy of his Social Security card as proof of his identity; a photocopy of his birth certificate as proof of his identity; and a copy of his

twin brother's driver's license evidencing the fact that they are two separate people.

**Defendant Equifax's Response to Plaintiff's January 2024 Dispute**

186.    Equifax failed to conduct a reasonable reinvestigation, or any reinvestigation whatsoever, of the personal and credit information disputed by Plaintiff in January 2024, in violation of 15 U.S.C. § 1681i.

187.    Instead, on or about January 29, 2024, Equifax mailed Plaintiff correspondence again requesting additional proof of his identity, now for a sixth time.

188.    As a result of the Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit and/or being offered credit under adverse terms; loss of the ability to purchase and benefit from his good name and credit rating; detriment to his credit rating, debt-to-income ratio, and overall creditworthiness; a potential delay of employment; being chilled from seeking additional credit opportunities; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including, but not limited to, stress; anxiety; loss of sleep; the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumers' personal and credit account information mixed into his credit files; and the stress of having false and misleading information circulated about him through his credit reports.

189.    At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of Defendants herein.

190.    At all times pertinent hereto, the conduct of Defendants, as well as that of their agents, servants, and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal law and the rights of Plaintiff herein.

**CLAIMS FOR RELIEF**

**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**
**(First Claim for Relief Against Defendants Equifax, Experian, and Trans Union)**

191.    Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-190 as if fully stated herein.

192.    Defendants Equifax, Experian, and Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy of the contents of the credit reports and credit files they published and maintain concerning Plaintiff.

193.    As a result of the Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit and/or being offered credit under adverse terms; loss of the ability to purchase and benefit from his good name and credit rating; detriment to his credit rating, debt-to-income ratio, and overall creditworthiness; a potential delay of employment; being chilled from seeking additional credit opportunities; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including, but not limited to, stress; anxiety; loss of sleep; the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumers' personal and credit account information mixed into his credit files; and the stress of having false and misleading information circulated about him through his credit reports.

194.    Defendants' conduct, action, and inaction was willful, rendering them each separately liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

195.    Plaintiff is entitled to recover attorneys' fees and costs from Defendants in an

amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**
**(Second Claim for Relief Against Defendants Equifax, Experian, and Trans Union)**

196.     Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-190 as if fully stated herein.

197.     Defendants violated 15 U.S.C.§ 1681i by failing to delete inaccurate information in Plaintiff's credit file after they received notice of such inaccuracies; by failing to conduct a reasonable reinvestigation of disputed personal information, credit accounts, and hard inquiries within the 30-day time frame outlined in the FCRA; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file and reports.

198.     As a result of the Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit and/or being offered credit under adverse terms; loss of the ability to purchase and benefit from his good name and credit rating; detriment to his credit rating, debt-to-income ratio, and overall creditworthiness; a potential delay of employment; being chilled from seeking additional credit opportunities; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including, but not limited to, stress; anxiety; loss of sleep; the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumers' personal and credit account information mixed into his credit files; and the stress of having false and misleading information circulated about him through his credit reports.

199.     Defendants' conduct, action, and inaction was willful, rendering them each separately liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent,

entitling Plaintiff to recover under 15 U.S.C. § 1681o.

200.     Plaintiff is entitled to recover attorneys' fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C.§ 1681n and/or § 1681o.

**COUNT III**
**15 U.S.C. § 1681b(a)**
**Furnishing a Credit Report Without a Permissible Purpose**
**(Third Claim for Relief Against Defendants Equifax, Experian, and Trans Union)**

201.     Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-190 as if fully stated herein.

202.     This action involves the willful, knowing, and/or negligent violation of the FCRA relating to the dissemination of consumer credit and other financial information.

203.     Plaintiff is a "consumer" as defined by the FCRA.

204.     Defendants Equifax, Experian, and Trans Union are consumer reporting agencies that furnish consumer reports as defined and contemplated by the FCRA.

205.     The FCRA prohibits any consumer reporting agencies from furnishing a consumer report unless they have a permissible purpose enumerated under the FCRA, 15 U.S.C. § 1681b(a).

206.     On multiple occasions, Defendants Equifax, Experian, and Trans Union furnished Plaintiff's credit reports to various creditors without a permissible purpose in response to an applications of credit initiated by another consumer, which did not involve Plaintiff and which Defendants Equifax, Experian, and Trans Union therefore had no reason to believe that the various creditors intended to use Plaintiff's credit information in connection with a credit transaction involving another consumer, in violation of 15 U.S.C. § 1681b(a).

207.     As a result of the Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit and/or being offered credit under adverse terms; loss of the ability to purchase and benefit from his good name and credit rating; detriment to his credit rating, debt-to-

44

income ratio, and overall creditworthiness; a potential delay of employment; being chilled from seeking additional credit opportunities; invasion of privacy; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including, but not limited to, stress; anxiety; loss of sleep; the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumers' personal and credit account information mixed into his credit files; and the stress of having false and misleading information circulated about him through his credit reports.

208.    Defendants' conduct, action, and inaction was willful, rendering them each separately liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

209.    Plaintiff is entitled to recover attorneys' fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT IV
### 15 U.S.C. § 1681g
### Failure to Provide Plaintiff with his Credit File
### (Fourth Claim Against Defendants Equifax, Experian, and Trans Union)

210.    Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-190 as if fully stated herein.

211.    The FCRA mandates that:

Every consumer reporting agency shall, upon request, and subject to section 1681h(a)(1) of this title, clearly and accurately disclose to the consumer:

(1) All information in the consumer's file at the time of the request;

(2) The sources of the information;

(3)(A) Identification of each person;

(4) The dates, original payees, and amounts of any checks upon which is based any adverse characterization of the consumer, included in the file at the time of the disclosure.

(5) A record of all inquiries received by the agency during the 1-year period preceding the request that identified the consumer in connection with a credit or insurance transaction that was not initiated by the consumer.

(6) If the consumer requests the credit file and not the credit score, a statement that the consumer may request and obtain a credit score.

15 U.S.C. § 1681g.

212.    Defendants violated 15 U.S.C. § 1681g by failing to provide Plaintiff with his credit files and reports on multiple occasions, despite having received several requests for the same along with documents proving his identity and current address.

213.    As a result of the Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit and/or being offered credit under adverse terms; loss of the ability to purchase and benefit from his good name and credit rating; detriment to his credit rating, debt-to-income ratio, and overall creditworthiness; a potential delay of employment; being chilled from seeking additional credit opportunities; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including, but not limited to, stress; anxiety; loss of sleep; the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumers' personal and credit account information mixed into his credit files; and the stress of having false and misleading information circulated about him through his credit reports.

214.    Defendants' conduct, action, and inaction was willful, rendering them liable for

actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

215.    Plaintiff is entitled to recover attorneys' fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

a)    Determining that each Defendant negligently and/or willfully violated the FCRA as alleged herein;

b)    Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

c)    Awarding Plaintiff reasonable attorneys' fees and costs from each Defendant as provided by the FCRA; and

d)    Granting further relief, in law or equity, as this Court may deem appropriate and just.

**DEMAND FOR JURY TRIAL**

216.    Plaintiff demands a trial by jury.


Dated: August 15, 2024                              By: */s/ Adam S. Alexander*
                                                    Adam S. Alexander (P53584)
                                                    **ALEXANDER LAW FIRM**
                                                    Attorney for Plaintiff
                                                    17200 W. Ten Mile, Ste. 200
                                                    Southfield, MI 48075
                                                    Tel: (248) 246-6353
                                                    Fax: (248) 746-3793
                                                    Email: adalesq@gmail.com

                                                    Hans W. Lodge, MN Bar No. 0397012*

Ivy L. Marsnik, MN Bar No. 0403177*
**BERGER MONTAGUE PC**
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Telephone: (612) 607-7794
Fax: (612) 584-4470
Email: hlodge@bm.net
      imarsnik@bm.net
*Pro hac vice application forthcoming*

*ATTORNEYS FOR PLAINTIFF*